**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4546-18T3

TUHIN PANDYA,

     Plaintiff-Appellant,

v.

ROOPAL SHAH,

     Defendant-Respondent.

_____

Submitted February 25, 2020 – Decided April 3, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1499-12.

Paul Alexander Clark, attorney for appellant.

Shane & White, LLC, attorneys for respondent (Lauren Ann Miceli, of counsel and on the brief; Kenneth A. White, on the brief).

PER CURIAM

Plaintiff ex-husband Tuhin Pandya appeals from March 25 and June 3, 2019 Family Part orders, amending his parenting time and child support obligations with respect to the parties' seven-year-old son, A.P. We affirm.

I.

We addressed the parties' marital settlement agreement (MSA) and subsequent divorce in plaintiff's previous appeal, Pandya v. Shah, No. A-3900-14 (App. Div. Dec. 8, 2016) (slip op. at 7). We derive the following facts from the record.

The parties married in September 2010. Defendant gave birth to A.P., their only child, in January 2012. Less than two weeks later, plaintiff filed for divorce, claiming defendant had an affair with her employer. After a year of litigation, the parties agreed to the terms of their MSA, which the court incorporated into their final judgment of divorce (FJD), entered on January 14, 2013. Among other things, the MSA addressed custody, parenting time, and child support, and set forth the equitable distribution of marital property; in addition, each party waived "any right to past, present or future alimony from the other party."

Regarding A.P., the parties "agree[d] to retain joint legal custody over said minor child, with [defendant] maintaining the primary residential custody over

said child." The effect of the MSA was to designate defendant as the parent of primary residence (PPR) and plaintiff as the parent of alternate residence (PAR). The MSA initially provided plaintiff with limited parenting time: alternate weekend parenting time, beginning Saturdays at 12:00 p.m. and concluding Sundays at 6:00 p.m., in addition to two hours of parenting time every Tuesday and Thursday. Effective October 2013, the MSA expanded plaintiff's parenting time to include Friday overnights. This parenting time plan remained in place until the entry of the March 2019 order under review. The MSA further set plaintiff's child support obligation at $180 per week.

Shortly after the parties finalized their divorce, plaintiff began filing motions, challenging the parties' MSA and FJD. Primarily, plaintiff argued, as he continues on this appeal, that defendant had hidden assets and unreported income, which the court should impute to defendant in determining the parties' parenting time and child support obligations. This litigation resulted in March 25 and April 17, 2015 trial court orders, entitling defendant to retain all the proceeds she received as the result of a settlement she reached with her former employer, and increasing plaintiff's child support obligation to $343 per week.

In October 2016, we decided plaintiff's initial appeal in Shah, slip op. at 7. There, we affirmed the finding of the trial court that "defendant was not aware

A-4546-18T3

of and did not pursue her claims" against her employer until after the divorce. Id. at 9. Moreover, we noted that "if the claims arose prior to the date of the MSA, plaintiff . . . released defendant from asserting the right to equitable distribution" of the claims. Ibid. Similarly, this court found plaintiff's claim, that defendant allegedly transferred money to India during their marriage, also lacked merit, since the parties acknowledged their satisfaction with each other's asset disclosure in the MSA. Id. at 12-13. Therefore, we held the parties were otherwise bound by the terms of the MSA.

Before his initial appeal concluded, on October 13, 2016, plaintiff filed a motion seeking a recalculation of child support and adjustment of parenting time. On December 14, 2016, the trial court entered an order reserving decision on plaintiffs' motion pending a plenary hearing.

In preparation for the hearing, defendant retained Dr. Mathias Hagovsky, Ph.D., a forensic psychologist, as a child custody expert. Plaintiff refused to hire a joint expert and otherwise failed to retain his own expert. Over the course of eight months, Dr. Hagovsky conducted extensive interviews with both parties; in addition, he observed each parent separately with A.P. On March 31, 2017, Dr. Hagovsky issued a twelve-page report setting forth his findings and recommendations.

4

The plenary hearing took place over a two-year span, with the trial court hearing testimony on eleven different dates. Throughout the hearing, plaintiff continued seeking additional parenting time and a modification of his child support obligations.

Instead of focusing on the issues properly before the hearing judge, on multiple occasions, and despite the judge warning plaintiff's counsel to avoid raising issues already decided, plaintiff continually urged the court to reverse prior decisions relating to the disclosure of defendant's assets. In response to one such request, the trial judge stated, "Portions of the Appellate Division decision were read into the record on multiple occasions. And the [c]ourt was satisfied that those issues had been resolved by the Appellate Division and that [plaintiff] would not get a second bite at the apple . . . ." The judge made it clear that the issues before the court involved plaintiff's parenting time and his child support obligation. Regarding these issues, plaintiff argued the judge should split parenting time evenly and should designate him as the PPR. Defendant accepted the recommendations of Dr. Hagovsky and maintained the parties should continue to share joint legal custody, with her continuing as PPR.

Over two days, on March 21 and 25, 2019, the hearing judge rendered his oral decision. The judge found the testimony of Dr. Hagovsky credible and

5

adopted his parenting plan recommendation. Notably, the recommended parenting plan substantially increased plaintiff's parenting time. Under the plan, defendant continued as the PPR, "exercising parenting time nine out of fourteen days with the plaintiff being [PAR] with parenting time five out of the fourteen days[.]" The plan also provided plaintiff with "two and a half times more overnights." The judge found "the parenting plan as outlined by Dr. Hagovsky is in the child's best interest, with the express understanding that the parties may exercise any discretion to expand upon it and adjust holidays to meet the needs of the child and parties hopefully to achieve a level of cooperation."

Dr. Hagovsky's report also recommended the appointment of a parenting time coordinator. The judge agreed, finding "this case cries out for a parent[ing time] coordinator[,] at least until such time as the parties are able to communicate and cooperate with each other." The judge appointed an attorney, Eileen Foley, as the parenting time coordinator; based upon past experience, he believed "she will be the voice of reason between the two parties."

Next, the hearing judge made his credibility assessments, finding "plaintiff not . . . credible and defendant . . . credible." In support of this determination, the judge recounted extensive observations he made throughout the numerous hearing dates. He noted numerous inconsistences and "bizarre"

6

positions taken by plaintiff throughout the litigation, concluding plaintiff was the sole cause of the contentious relationship between the parties.

In deciding the custody issue, the trial judge reviewed the fourteen factors set forth in N.J.S.A. 9:2-4 to determine what was in the best interest of A.P. The judge provided a factual basis as to each factor in determining the new parenting time plan. In addition to plaintiff's increased time overall, both parties were allotted two consecutive weeks of summer parenting time, and should either party wish to travel internationally, four uninterrupted weeks, provided the other party is afforded the same time.

The hearing judge next addressed the issue of the parties' child support obligations and requests for counsel fees. He attributed income to plaintiff of $168,968 and to defendant of $32,350. He ordered plaintiff to pay child support in the amount of $310.00 per week, payable by wage garnishment. The judge also addressed a daycare issue raised by plaintiff: "The parties agree that there was a period of time that the plaintiff paid for day care or child care when the defendant had not incurred that expense[;]" however, due to lack of sufficient proof at that time, the judge allowed each party to submit a certification outlining the amounts overpaid within 41 days.

A-4546-18T3

Next, the hearing judge turned to the issue of counsel fees. The judge denied plaintiff's request for counsel fees explaining, "It is he who has protracted this litigation . . . and his ill[-]advised position that has extended the litigation. He has ignored [c]ourt orders, Appellate Division decisions and at time[s], logic."

Turning to defendant's request for counsel fees, the judge first considered the factors in Rule 4:42-9. Before reviewing those factors, the judge noted

> [t]he [c]ourt is satisfied that [plaintiff] has taken an unreasonable approach to this litigation. Whether fueled by animosity or bad advice, he has taken unreasonable, ill fated or just plain wrong positions. This matter should have been resolved months ago to the benefit of the parties' child, yet plaintiff continues.

Regarding the "parties' ability to pay," he determined plaintiff "is in a much better financial position than the mother to satisfy his own fees as well as contribute to the fees incurred by [defendant]." As to "the reasonableness and good faith of the positions advanced by the parties," he found plaintiff's cumulative actions "exemplify his bad faith in the broadest sense of the word." The judge further noted defendant provided a certification of fees incurred but plaintiff did not.

The judge addressed "the extent of the fees incurred by both parties," noting defendant incurred $76,319 in attorney's fees and expert costs of $6,775.

He also noted defendant incurred $10,989 in fees while defending plaintiff's initial appeal. Plaintiff's counsel did not provide a certification of services.

Regarding "the results obtained," the judge found defendant successfully advanced her position through her expert, Dr. Hagovsky. As to "any other factor bearing on the fairness of an award," he found defendant was "stoic" while plaintiff "advanced false claims, misrepresented facts, ignored [c]ourt [orders] and an Appellate Division decision[.] He has put his son in the middle and has repeatedly advanced sometimes bizarre positions in an effort to get what he wants. There's no sign of compromise regardless of whatever damage it may cause."

The hearing judge also reviewed the Rules of Professional Conduct 1.5 (RPC 1.5), to guide his determination as to the reasonableness of a fee award, addressing the eight factors set forth in the rule. He ultimately awarded defendant counsel fees in the amount of $62,237.05. In his March 25, 2019 order, the judge confirmed the parties' continued joint legal custody of A.P., with defendant remaining the PPR and plaintiff continuing as the PAR. The order also required plaintiff to reimburse defendant for the child's extracurricular activities in the amount of $3,127.12, pursuant to the terms of the MSA.

On June 3, 2019, the judge ordered that plaintiff receive a credit of $3,328 for the monies he paid for A.P.'s daycare since his unenrollment. Applying this credit, the judge reduced the amount plaintiff owed defendant for attorney's fees to $58,909.05.

This appeal followed. The only issues plaintiff properly raises on appeal concern the orders relating to the parties' parenting time and custody, the amended child support obligation, and the award of counsel fees. Plaintiff's remaining contentions concern his repeated and untimely attempts to challenge rulings that the trial court and this court previously addressed.

II.

Plaintiff first contends the hearing judge erred in not granting him shared residential custody of A.P., on an equal "50/50" basis. He asserts the parent of a minor child has a fundamental right to 50/50 parenting time "as a default position," absent a showing of unfitness. He also argues the trial judge relied on a "stale" expert report in determining the issue of parenting time.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins.

Co. of Am., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate with respect to credibility determinations based on witness testimony, since the court had the ability to see and hear the witnesses, and with respect to family court factfinding, due to "the family courts' special jurisdiction and expertise in family matters." Id. at 412-13.

Consequently, "we 'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or . . . determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412).

"The touchstone for all custody determinations has always been 'the best interest[s] of the child.'" Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009) (quoting Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). "Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c)." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). The statute requires that

> [i]n making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to

11

accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[N.J.S.A. 9:2-4(c).]

When "the parents cannot agree to a custody arrangement, the court may require each parent to submit a custody plan which the court shall consider in awarding custody." N.J.S.A. 9:2-4(e). Lastly, when making "any custody arrangement not agreed to by both parents," the "court shall specifically place on the record the factors which justify" its order. N.J.S.A. 9:2-4(f).

"[T]he decision concerning the type of custody arrangement [is left] to the sound discretion of the trial court[.]" Nufrio v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001) (second and third alteration in original) (quoting Pascale v. Pascale, 140 N.J. 583, 611 (1995)). Therefore, on appeal "the opinion of the

trial judge in child custody matters is given great weight . . . ." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994) (citations omitted).

We first note that plaintiff waived his initial right to an equal, shared parenting time arrangement by virtue of the clear terms of the MSA. Therefore, plaintiff was required to show a substantial change of circumstances in order to modify the custody and parenting time provisions of the MSA. See Hand, 391 N.J. Super at 102. After making extensive credibility determinations, the hearing judge considered each factor set forth in N.J.S.A. 9:2-4(c). The judge referenced the extensive record which provided the basis for his decision that plaintiff failed to satisfy his burden of showing a substantial change of circumstances.

The hearing judge also properly considered the report of Dr. Hagovsky, despite plaintiff's contention that the report was "stale." Defendant offered Dr. Hagovsky as a qualified expert and plaintiff made no objections. Defendant then moved Dr. Hagovsky's report into evidence for consideration, without any objection from plaintiff. Plaintiff also never retained his own expert nor did he request the judge to appoint one.

Furthermore, Dr. Hagovsky's recommendations provided plaintiff a substantial increase in parenting time. The trial court did not err in considering

Dr. Hagovsky's recommendation in determining the custody and parenting time of the parties. The judge's decision comported with the evidence and unrefuted expert testimony of Dr. Hagovsky. We also find no evidence to support plaintiff's claim that Dr. Hagovsky's report was stale. Therefore, we discern no abuse of discretion as to the judge's rulings addressing custody and parenting time.

## III.

Plaintiff also argues the judge erred in reassessing his child support obligation and unreasonably awarded defendant attorney's fees. Specifically, he contends the judge mistakenly failed to impute income to defendant and reduce his obligation because A.P. no longer required daycare.

A judge's decision to grant or deny an application to modify child support is reviewed for an abuse of discretion. Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). "Of course, the exercise of this discretion is not limitless" and remains guided by the law and principles of equity. Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004). A judge abuses his or her discretion where the award is "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Jacoby v. Jacoby,

427 N.J. Super. 109, 116-17 (App. Div. 2012) (internal quotation marks and citation omitted).

At the outset, the parties' MSA and our decision in Pandya, slip op. at 7, effectively precludes plaintiff's continued arguments regarding the imputation of defendant's past income. We previously determined that plaintiff did not prove defendant hid substantial assets and concluded defendant's settlement was not subject to equitable distribution. Additionally, the MSA stated that the parties voluntarily waived the right to seek further discovery regarding any issues that arose between them.

We conclude the judge properly determined plaintiff's ongoing child support obligation. He provided his calculations on the record, which reflected a reasonable exercise of his discretion. We discern no basis to conclude the judge's rulings were manifestly unreasonable or improperly calculated.

Similarly, plaintiff argues the hearing judge did not adequately consider the required factors in awarding defendant attorney's fees in the amount of $62,237.05, before the daycare credit. He further contends, to the extent the judge considered the requisite factors, the record did not support his conclusions.

A-4546-18T3

We review an award of counsel fees for an abuse of discretion. Where the judge follows the law and "makes appropriate findings of fact, a fee award is accorded substantial deference and will be disturbed only in the clearest case of abuse of discretion." Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); see also Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)); Barr, 418 N.J. Super. at 46. This court will disturb a counsel fee determination "only on the rarest of occasions . . . ." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001)).

Plaintiffs contention on appeal are misguided. In making his determination to award defendant counsel fees, the hearing judge addressed each factor in both Rule 4:42-9 and RPC 1.5; therefore, he relied on well-established principles of law. With these principles in mind, the judge supported his determination with numerous references to the lengthy hearing record. Moreover, we note that defendant initially sought an award of $94,083. In

16

considering the amount requested, the judge properly removed sums defendant expended in prior proceedings, before plaintiff filed the motion under review, and also declined to include defendant's expert's fees.

We therefore see no reason to disturb the judge's well-reasoned determination reassessing plaintiff's child support obligation and awarding defendant attorney's fees.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4546-18T3