**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4724-18T4

A.A.,[1]

    Plaintiff-Appellant,

v.

T.A.,

    Defendant-Respondent.

_____

        Submitted October 27, 2020 — Decided November 13, 2020

        Before Judges Mawla and Natali.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1201-17.

        Tanya L. Freeman, attorney for appellant (Tanya L. Freeman and Devon W. MacGillivray, on the briefs).

        T.A., respondent pro se (Gregory D.R. Behringer, on the brief).

PER CURIAM

---

[1] We utilize initials pursuant to Rule 1:38-3(d)(12).

Plaintiff AA. appeals from a May 20, 2019 dual final judgment of divorce awarding sole legal custody of the parties' son to defendant T.A. following a trial. We vacate the award and remand for reconsideration.

The parties were married for eleven years when plaintiff filed his complaint for divorce. One child was born of the marriage, who was eleven years old at the time of trial. Plaintiff's complaint for divorce sought joint legal custody of the child, to designate plaintiff parent of primary residence, and to establish a parenting time schedule. Defendant's counterclaim did not address legal custody and sought only to designate her the parent of primary residence.

In September 2017, the parties attended mediation with court staff who prepared a memorandum of understanding (MOU) memorializing their custody agreement. The MOU provided for: joint legal custody, designated defendant parent of primary residence; established a parenting time, holiday, and vacation schedule; and required the parties to encourage a relationship between the child and the other party. In October 2017, defendant filed a domestic violence complaint against plaintiff, alleging verbal harassment and terroristic threats. Notably, an amended temporary restraining order (ATRO) issued later that month listed no restraints relating to the child and established a parenting time schedule for plaintiff.

2

In November 2017, a judge, not the matrimonial trial judge, tried the domestic violence matter and granted defendant a final restraining order (FRO), finding harassment. The record does not contain a transcript of the domestic violence trial; however, the FRO maintained the parenting time schedule set forth in the ATRO, issued no restraints regarding the child, and made no custody determination. On December 11, 2017, the parties entered into a consent order in the domestic violence matter granting plaintiff alternating weekend parenting time from Friday until Monday and mid-week dinner parenting time on Tuesday and Thursday pending a final resolution of the divorce.

A three-day divorce trial occurred in April 2019. Each party and their accounting experts testified. Prior to hearing testimony, the trial judge invited counsel to give opening statements; plaintiff's counsel declined to do so, and defendant's counsel spoke only regarding economic issues. The parties' testimony mostly involved the economic aspects of the case and had little to do with custody. Neither party proffered evidence regarding custody or parenting time beyond the following: the divorce complaint; the December 2017 consent order; an amended FRO; and defendant's Rule 5:8-5 custody and parenting time plan, which proposed "the parties share joint legal custody of the . . . child[.]"

Each party submitted pre-trial memoranda. Plaintiff's memorandum stated: "[Plaintiff] seeks to follow the custody arrangement and parenting time schedule set forth in the parties' [MOU.]" Defendant's trial memorandum addressed her position on custody by discussing the fourteen N.J.S.A. 9:2-4(c) factors and posited as follows:

> In the instant matter, an award of joint legal custody is appropriate. Notwithstanding the parties['] personal acrimony and the deterioration of their marriage and the history of domestic violence, when it comes to the major decisions for the health, education and welfare of the child, which are generally rare in [occurrence] given the child's age, the parties have been able to act in the best interests of the child. [Defendant] is committed to continuing to do so, and to make major decisions jointly with [plaintiff].

Plaintiff offered the following limited testimony regarding custody:

> PLAINTIFF'S COUNSEL: What custody and parenting time plan do you want to follow after the divorce? . . .
>
> PLAINTIFF: . . . I . . . have two days a week and one other week I have weekend and two days, but two days and five days is good.
>
> PLAINTIFF'S COUNSEL: . . . So you want to keep the schedule that you presently have?
>
> PLAINTIFF: I wish I can have him all the time.

Defendant's counsel did not cross-examine plaintiff on this testimony.

4

Defendant's testimony regarding custody and parenting time focused more on residential custody than on legal custody and was consistent with her proposed custody and parenting time plan. She described how she was involved with the child's schooling, activities, and medical and dental care, and purchased his clothing. Over plaintiff's counsel's hearsay objection, the trial judge permitted defendant to testify to what the child said plaintiff told him. The judge reasoned the testimony was admissible because it was "the plaintiff's statement. The plaintiff can be . . . recalled to testify about the truth of those statements." According to defendant, plaintiff allegedly told their child that he was "going to kick [defendant] from the house. And [the child] told me if I'm going to leave the house, I'm going to die. I told him never mind . . . I'm not going to leave you." Defendant's counsel asked: "So does he ever say any nice things about you to your son?" Defendant answered: "Nothing." Defendant also testified plaintiff bought the child toy knives and guns, which she thought were inappropriate.

Defendant testified she wanted primary residential custody of the child. Her testimony regarding legal custody was as follows:

> [DEFENDANT'S COUNSEL]: Okay, as far as joint custody is concerned, I explained . . . what that meant to you, that [plaintiff] would be able to participate in decisions concerning [your son] okay? So joint legal

5

custody, but you want physical custody with him to live with you most of the time.

[DEFENDANT]: Yes.

Defendant also testified she wished to maintain the parenting time schedule in the parties' consent order, but wanted plaintiff not to involve the child in the parties' disputes or disparage defendant to the child.

Plaintiff's counsel did not cross-examine plaintiff regarding custody and parenting time issues. Although plaintiff was recalled for rebuttal testimony, counsel did not address custody or parenting time.

Each attorney offered an oral summation. Regarding custody and parenting time, defendant's counsel stated: "I think we've already stipulated in regard to custody and the parenting plan that is before . . . this [c]ourt." Plaintiff's counsel's summation on the subject was equally brief stating: "In terms of custody and parenting time, that . . . issue was resolved. There's not a dispute there."

The trial judge issued a written decision. He recounted plaintiff sought joint legal custody in his complaint for divorce and defendant "expressed a willingness to share legal custody with [p]laintiff." He referenced the custody and parenting time plan proposed by defendant. He noted plaintiff's testimony on custody was comprised of

6

limited statements, [and p]laintiff provided no testimony with respect to his relationship with [the child], his involvement in [the child's] life prior to the filing of his divorce complaint or after, whether and how he meets [the child's] needs, his desire for custody, how he would managed the operation of his business and custody and expanded parenting time, or any other information to assist the court in evaluating the custody factors below.

The trial judge concluded, "[w]hile no single custody factor within N.J.S.A. 9:2-4 was dispositive, this court is persuaded that factors (1), (2), (3), (4), (5), (7), (9), (11) and (12), . . . favor awarding sole custody to [d]efendant, and no factors weigh materially against this determination."

The judge's findings regarding the statutory factors persuasive regarding sole custody were as follows:

> 1. The parents' ability to agree, communicate and cooperate in matters relating to the child.
>
> There was no[t] a lot of testimony provided on this subject; however, the court does observe that there is a[n FRO] in place, which prohibits generally contact or communication between the parties. It does not appear[] that there is any exception for communications regarding the child . . . . Rather, it appears that [the child] has a cell phone, and the parties communicate directly with the child. With respect to this factor, the court does note the following[:] The parties appear to disagree regarding the appropriateness of toys purchased by [p]laintiff for [the child], which include guns and knives. Further, the court finds credible [d]efendant's testimony that [p]laintiff involves the

child in the litigation and states things such as [p]laintiff will kick [d]efendant out of the house.

2. The parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantial abuse.

Defendant's testimony reflected a stated desire for custody, and more specifically to be designated as the parent of primary physical custody. She also acknowledged a willingness to share joint legal custody with [p]laintiff. Aside from a statement by [p]laintiff that he "wishes to have [the child] all the time," [p]laintiff made no affirmative or specific statement regarding custody and he provided no material information about his ability to exercise custody and additional parenting time. There was no evidence presented during trial that either party has been unwilling to permit parenting time. In this context, it must be noted that following the issuance of the initial [TRO], [p]laintiff's parenting time was suspended. Following the issuance of the [FRO], [d]efendant consented to provide [p]laintiff with parenting time as reflected by the December 11, 2017 consent order . . . . There is no indication that the parties have failed to follow or violated the . . . consent order regarding parenting time.

3. The interaction and relationship of the child with its parents and siblings.

Plaintiff provided no information about his interactions and relationship with [the child] or what, if any, relationship [the child] has with his two half-sisters. Defendant testified that she has a strong relationship with [the child], she does everything with [him] and that she "loves him and he is the only thing in her life." Defendant testified that she is involved in

all aspects of his life. She is engaged in [the child's] education, attends his events and parent-teacher conferences, she takes him to and supports him in his activities, including swimming and music, and takes him to all of his medical appointments. Defendant knew the identity of both [the child's] teacher and doctors.

4. The history of domestic violence.

There exists a documented history of domestic violence. In this regard, [d]efendant holds a [FRO] against [p]laintiff, which was issued during the pendency of this divorce litigation.

5. The safety of the child and the safety of either parent from physical abuse by the other parent.

While there was no evidence presented that [p]laintiff subjected [the child] to physical abuse, the existence and need for the [FRO] held by [d]efendant against [p]laintiff reflects that [d]efendant is not safe from further abuse by [p]laintiff.

. . . .

7. The needs of the child.

Plaintiff provided no testimony about [the child's] needs or his ability to meet those needs. Defendant testified that [the child] has no special needs. Defendant has not worked outside of the home during the entirety of the marriage and since [the child's] birth. It was not disputed that [d]efendant has been the primary caregiver for [the child] since birth. Based upon [d]efendant's testimony regarding her involvement with [the child's] education, extracurricular activities and medical appointments, it

9

appears that [d]efendant currently meets all of [the child's] needs. Based upon the fact that there was no evidence presented regarding [d]efendant's failure to meet any of [the child's] needs in her role as the primary caregiver, the court concludes that she has and can, meet all of [the child's] needs.

. . . .

9. The fitness of the parents.

No evidence was presented regarding the fitness of the parties. The court finds that [d]efendant is fit in all material respects as a result of her acting as [the child's] primary caregiver during the entirety of his life without any documented incidents or concerns. While there is no direct evidence that [p]laintiff is unfit as a parent, the court is unable to definitively conclude that he is a fit parent based upon the complete absence of information provided to this court regarding: (i) [p]laintiff's involvement in [the child's] life prior to the filing of his divorce complaint; and (ii) the quality of the time spent by [p]laintiff with [the child] both before and after the divorce complaint filing date. In addition, it is difficult to conclude that [p]laintiff is affirmatively fit as a parent in light of the existence of a[n FRO]. Moreover, the court finds credible [d]efendant's claims that [p]laintiff involves the child in the litigation and states things to [the child] such as [p]laintiff will kick [d]efendant out of the house.

. . . .

11. The extent and quality of the time spent with the child prior to and subsequent to the separation.

Pursuant to a consent order, . . . [p]laintiff currently has parenting time every other weekend from

10

pick-up after school on Friday until Monday morning drop-off at school . . . . In addition, [p]laintiff has parenting time every Tuesday and Thursday from after school until 8:00 p.m. when [p]laintiff drops-off [the child] curbside at [d]efendant's home . . . . Plaintiff failed to provide any testimony regarding the extent and quality of time spent with [the child] prior to December 11, 2017. While it does appear that [p]laintiff has exercised his parenting time following the December 11, 2017 consent order, he failed to provide any testimony regarding the quality of time spent with [the child] during his parenting time after December 11, 2017. Although [d]efendant's testimony was not overly detailed, it does appear that she has been the primary caretaker for [the child] since his birth and she is involved in all aspects of his life, including academics, extracurricular and medical needs.

12. The parents' employment responsibilities.

Defendant does not work and has not worked during the entirety of the parties' marriage. Defendant is currently enrolled in college full-time and she currently manages the parties' rental property . . . . Defendant expressed a desire to obtain her college degree so that she can work as an administrative assistant. During the pendency of the divorce, it appears that [d]efendant was able to attend college full-time, manage the rental property . . . and tend to her primary caretaking role for [the child].

Plaintiff is [sixty-eight] years old and he currently collects social security retirement benefits. However, [p]laintiff also continues to operate [a business]. While [p]laintiff has expressed a desire to retire . . . in the near future, he did not cite any specific plan for the sale or wind down of his business. Moreover, while [p]laintiff testified that he worked

11

long hours in the past, he did not provide any testimony about his current work schedule. Rather, [p]laintiff indicates that [the business] currently has only two customers. Plaintiff also manages his rental properties . . . . He did not provide the court with any indication of the time requirements for managing the properties. On the basis of the foregoing, the court could not make any determinations regarding [p]laintiff's ability to assume custody or increased parenting time.

The judge concluded as follows:

Notwithstanding [d]efendant's willingness to share joint legal custody, following an evaluation of the custody factors set forth in N.J.S.A. 9:2-4, on the basis of Beck[ v. Beck, 86 N.J. 480 (1981)] . . . , this court finds that it is in the best interest of [the child] that [d]efendant be awarded sole legal and physical custody of [the child]. While this court recognizes that it may be unusual to award sole custody to [d]efendant, especially considering that she expressed a willingness to provide [p]laintiff with joint legal custody, the court is constrained to consider shared legal custody by the complete absence of information provided in support of an award of custody (shared or otherwise) to [p]laintiff. In this context, the court bases its decision on the following: (i) that the parties reached no firm agreement on custody prior to trial; (ii) there was an absolute and total absence of information provided to the court regarding the parties' ability to consult and agree on issues regarding the child; (iii) there exists a FRO that prohibits generally the parties' communications; (iv) [p]laintiff provided no material testimony regarding his willingness and ability to exercise custody (legal or otherwise). As a result of the foregoing, the court looks solely to the custody factors to determine custody . . . .

> Despite concluding that [d]efendant should have sole custody of [the child], this court does acknowledge [d]efendant's expressed desire that [the child] have a relationship with [p]laintiff. Defendant expressed a willingness to maintain the current parenting time schedule within the . . . consent order and [p]laintiff also found that schedule acceptable.

On appeal, plaintiff argues the award of sole legal custody to defendant constituted an abuse of discretion because it was made without notice and contrary to the parties' positions at trial. He argues the court did not address all the N.J.S.A. 9:2-4(c) factors and incorrectly assumed the parties could not communicate because of the FRO, yet the history of the case showed otherwise. Plaintiff argues the award of sole custody adversely impacts his ability to travel internationally with the child and the ability to access school and medical records.

Plaintiff asserts he understood legal custody was uncontested because defendant's proposed custody and parenting plan submitted prior to trial stated she agreed to joint legal custody, she testified to joint legal custody, and did not argue for sole custody in summation. Plaintiff argues there was no basis to award sole legal custody and no evidence to demonstrate his unfitness despite the domestic violence.

A-4724-18T4

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (internal citation omitted) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "On the other hand, where our review addresses questions of law, a 'trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles.'" N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)). The standard of review for conclusions of law is de novo. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In adopting N.J.S.A. 9:2-4, our Legislature affirmatively stated:

> [T]hat it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have . . . dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.

N.J.S.A. 9:2-4(d) states: "The court shall order any custody arrangement which is agreed to by both parents unless it is contrary to the best interests of

14

the child." We are unaware of precedent interpreting N.J.S.A. 9:2-4(d), however the Legislature's usage of the word "shall" signals its acknowledgement of the primacy of parental autonomy to agree upon custody, while assuring the authority of Family Part judges to protect the best interests of children. In other matrimonial contexts, our case law is replete with similar principles. Indeed, our Supreme Court has repeatedly held that

> [s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system. Indeed, there is a strong public policy favoring stability of arrangements in matrimonial matters. This Court has observed that it is shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves. Therefore, fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.
>
> [Quinn v. Quinn, 225 N.J. 34, 44-45 (2016) (internal citations omitted).]

The Court has stated: "Joint legal custody, meaning the 'authority and responsibility for making 'major' decisions regarding the child's welfare,' is often shared post-divorce by both parents . . . . Joint legal custody provides rights and responsibilities to custodial parents, but it also confers rights with less significant responsibilities to non-custodial parents." Pascale v. Pascale, 140

N.J. 583, 596 (1995). Furthermore, "[i]n New Jersey, joint legal custody with physical custody given to only one parent is much more common." Id. at 597.

In cases where courts have awarded a party sole legal custody, the facts were starker than those presented here. In Nufrio v. Nufrio, we upheld the trial judge's award of sole legal custody where the judge found the father

> does nothing that is not for his own benefit, he cannot perceive how difficult he makes things for other people and does not believe that he has done wrong, in anything. He is one who believes his own lies.
>
> . . . .
>
> He is pathological in his testimony and he is totally unbelievable. His videotaping at the police station exchanges, his complaints to the State about day care and his multiple filings of litigation all appear to be an attempt to assert his dominance over his former wife.

[341 N.J. Super. 548, 552-53 (App. Div. 2001).]

We also noted the trial judge's findings the father never spoke to the mother, laughed and smiled during her testimony, was unable to cooperate or communicate with her and "reach even basic agreements" regarding the child. Id. at 553. Citing Beck and Pascale, we concluded, although joint legal custody is preferred,

> the findings of the judge make it clear that any form of "joint" custody or shared decision-making will be

16

detrimental to the parties' child. The concern that the defendant would use the label of "joint legal custody" as a disguised attempt to harass plaintiff through repeated applications to the court has support in the record. Such a situation would clearly be detrimental to the best interests of the child.

[Nufrio, 341 N.J. Super. at 555.]

Here, both parties unquestionably agreed to joint legal custody. Defendant testified to it, plaintiff did not oppose it, and both attorneys advised the court the issue was resolved. The evidence supported neither the judge's decision to reject the parties' agreement nor his statutory findings.

At the outset, we note the dearth of evidence supporting the judge's findings, which the judge acknowledged throughout his assessment of the statutory factors. We hold, where a judge believes an issue as important as legal custody is unsettled and is justiciable, the judge has a duty to inquire of the parties whether this is the case. Pursuant to N.J.R.E. 101(a)(4), "[i]f there is no bona fide dispute between the parties as to a relevant fact, the judge may permit that fact to be established by stipulation or binding admission." Here, the record does not support the conclusion the parties expected the judge to consider sole legal custody. Although legal custody was clearly not in dispute, the judge should have inquired during summations if there was any doubt in his mind.

17

Even if there was an expectation the court would adjudicate legal custody, the findings were inadequate. The judge's evidentiary ruling permitting defendant's testimony regarding what the child said plaintiff told him about defendant was double hearsay and a misapplication of discretion. "We will only reverse [an evidentiary determination] if the error 'is of such a nature as to have been clearly capable of producing an unjust result.'" Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017) (quoting Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015)). Here, the judge reasoned plaintiff could repeat what the child told her because "[i]t's the plaintiff's statement." However, the alleged statement was not admissible pursuant to N.J.R.E. 803(b) because the child neither testified nor was interviewed by the judge. This hearsay statement clearly had the potential to lead to an unjust result because the judge relied upon it in finding the first and ninth factors of N.J.S.A. 9:2-4(c) dispositive of legal custody.

It was also an error not to interview the child. The judge addressed this issue in his findings under the sixth statutory factor stating:

> The parties did not reference any preference on the part of [the child] regarding custody or that the current parenting time schedule be modified to provide more or less parenting time for one parent or the other. There also did not appear to be any material disagreement regarding either legal or physical custody of [the child],

and the parties expressed no desire for the court to interview [the child] regarding his preference. Based on the foregoing, the court did not seek input from [the child].

The sixth statutory factor requires the trial judge to consider "the preference of the child [regarding custody] when of sufficient age and capacity to reason so as to form an intelligent decision . . . ." A primary means of ascertaining the child's preference is through an interview with the trial judge, initiated either at a party's request or on the court's own motion. R. 5:8-6. If the judge declines to interview a child, they must place their reasons on the record. Ibid. A child interview is discretionary. See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 5:8-6, (2020).

Here, the judge stated the child's preference was not dispositive of the legal custody issue and noted he did not interview the child because there was no "material disagreement regarding . . . legal . . . custody[.]" However, the judge made no finding regarding the child's preference, and the lack of an interview prevented the judge from assessing the veracity of defendant's claim that plaintiff had improper conversations with the child, as the judge concluded in the first statutory factor. Also, an interview with the child would have enabled the judge to better assess his relationship with both parties as required by the third statutory factor, whether plaintiff met the child's needs pursuant to the

19

seventh factor, the ninth factor regarding parental fitness, and the eleventh factor regarding the extent and quality of time the child spends with a parent.

Next, we note there was little evidence supporting the judge's conclusion that statutory factors four and five were dispositive of legal custody. The judge's findings were that, by virtue of the existence of an FRO, defendant was "not safe from further abuse by [p]laintiff." The judge also used the existence of the FRO to assess the ninth factor and concluded it was "difficult to conclude that [p]laintiff is affirmatively fit as a parent[.]"

There is no doubt the judge could take judicial notice of the existence of an FRO. N.J.R.E. 201(b)(4). Moreover, the Supreme Court has stated " there is no such thing as an act of domestic violence that is not serious." Brennan v. Orban, 145 N.J. 282, 298 (1996). Further, the Legislature has concluded there is "a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence." N.J.S.A. 2C:25-18. However, custody awards in domestic violence proceedings to the non-abusive parent are temporary. N.J.S.A. 2C:25-29(b)(11).

The relationship between the domestic violence and its effects on major decision making and the award of sole legal custody was not evident on this

record.  To be clear, we do not require a victim of domestic violence to re-live the trauma of the domestic violence proceeding by testifying and enduring cross-examination in the matrimonial matter to establish N.J.S.A. 9:2-4(c) factors four and five.  However, at a minimum, we hold if the matrimonial judge did not try the domestic violence matter, the judge must review the transcript or audio recording of the domestic violence proceeding and correlate it to the custody findings in the matrimonial matter.

Finally, we see no connection between plaintiff's employment responsibilities and the award of sole legal custody to defendant.  According to the judge, plaintiff testified he worked long hours, but did not provide "any indication of the time requirements" associated with his work.  It is not unusual for parents to labor long hours to earn a living.  At the age of sixty-eight, plaintiff operates a business and manages rental properties; tasks we discern require a modicum of skill and the ability to make decisions.  We fail to see how these facts rendered plaintiff incapable of participating in major decisions affecting the child's health, education, and welfare.

To summarize, the record did not support the award of sole legal custody.  For these reasons, we vacate the sole legal custody award and remand the matter for reconsideration.  On remand the judge shall conference the matter with the

21

parties to determine whether they stipulate to joint legal custody. If the judge nevertheless concludes he cannot accept the stipulation, he shall try the issue in accordance with the guidance set forth in this opinion.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-4724-18T4