This is an appeal from an order entered in the Chancery Division denying to the plaintiff the further right of visitation and partial custody of his son, Cortlandt Roland Turney, Jr.
The plaintiff and defendant were married in January, 1942, and their son was born in June, 1943. The parties separated in 1944, the mother retaining custody of the child. In 1945, upon the plaintiff's petition, an order was entered granting to him the right of visitation on Sundays upon condition that he pay the sum of $36 per month for the support of his son. In 1946 the plaintiff obtained a decree of divorce in a Florida proceeding in which his wife participated. In 1947, upon the plaintiff's application for permanent custody of his son, the court directed that he have partial custody from every Saturday morning until every Sunday morning. In June, 1948, upon plaintiff's further application for permanent custody, the court ordered that, in addition to the partial custody theretofore allowed, the plaintiff should have his son for a period of two weeks in July and two weeks in August of each year. The views of the Advisory Master, as expressed in conclusions filed in September, 1948, were that there seemed to be little doubt that the plaintiff's visits were not welcomed by the defendant or her present husband; that the son was entitled to the affection, association, and companionship of his father; and that the son's welfare "can best be fostered by a gradual enlargement of the period of custody by the father as the child advances in years."
In November, 1948, a petition was filed by plaintiff alleging that he had not been permitted custody of his son on Saturday, October 9th, and on Saturdays thereafter and seeking to have the defendant adjudged in contempt. In January, 1949, plaintiff filed a supplemental petition setting forth that *Page 395 
on January 7, 1949, he had married Dorothy Treene, a widow, who had been a school teacher and was the mother of two daughters aged fourteen and twelve, that he and his present wife and daughters were living in a residential area of Madison with adequate facilities for his son and seeking an order awarding to him permanent custody of his son. After taking testimony and visiting the homes of plaintiff and defendant the Advisory Master, by order dated March 17, 1949, denied the plaintiff's applications for contempt and permanent custody and directed that the plaintiff's right of visitation be continued for a period of two months "at which time it will be determined by the court whether or not the visitation rights should be enlarged or diminished." Further testimony was taken on May 23rd, June 7th and June 23rd; on July 6th the Advisory Master determined that the previous orders be vacated and that thereafter and until further order of the court, the father be "denied further right of visitation and partial custody" of his son.
The plaintiff is a statistician employed by the Home Life Insurance Company. He is a graduate of Andover and Harvard University. His present wife is a graduate of Pennsylvania State Teachers College. He has at all time been a loving father, has continually evidenced a vital interest in the well being of his son and an awareness of the effects upon his son of the divided custody. His present wife testified that she was very fond of his son and that they "get along very nicely." The Advisory Master found that no essential distinctions could be drawn between the present homes of plaintiff and defendant and that both can provide the child with healthful surroundings and presumably with an intelligent upbringing. He, nevertheless, concluded that the defendant should have exclusive custody without any right of visitation to the plaintiff because of evidence that when the father came for his son the child resisted, screamed and became emotionally upset. These occurrences are not disputed, although there was adequate evidence indicating that they lasted for but a few moments and that, after leaving defendant's home and during plaintiff's custody, the child acted normally, playfully *Page 396 
and appeared to be entirely happy with his father and with Mrs. Turney and her two daughters.
Plaintiff testified that he had no difficulty before October, 1948; that the defendant had denied him any custody between October, 1948, and March, 1949, and that, although he had difficulty thereafter, it has decreased. In his testimony before the Advisory Master on June 7th, 1949, he stated that on Saturday, May 21st, the child did not cry but was smiling when he left with him; that on May 28th there was no unpleasantness and that his son played on that day with Mrs. Turney's daughters at the Beard School where they attend; and that, likewise, on June 4th there were no untoward actions and his son rode his bike, played baseball and attended a birthday party. The plaintiff places responsibility for whatever difficulties have arisen upon the defendant charging that, since October, 1948, she has not only failed to encourage his visits and prepare his boy for them, but has actively resisted them with the consequent influence upon the child. On the other hand, the defendant denies this and suggests that the boy developed a feeling of insecurity with his father in October, 1948, after he had moved from Rumson and had taken his son on overnight trips and, on one occasion, to a hotel in New York City. Plaintiff testified that on these occasions the boy "had a wonderful time."
In April, 1949, the defendant requested Dr. Kinley, a physician specializing in neurology and psychiatry, to witness a visit by the plaintiff. He did so and testified that the child clung to his mother, screamed, and did not want to accompany his father. The doctor expressed the opinion that such weekly occurrences would be detrimental to the child's emotional health and, if continued, would lead to the child being "a nervous and insecure human being." He stated that, although he arrived fifteen minutes before the plaintiff did, the defendant did not, in his presence, mention plaintiff's name or advise the child that his father was coming or make any other preparations for the father's visit. He acknowledged that the boy was open to suggestions as "any five year old youngster" would be. He testified affirmatively when *Page 397 
asked whether the father was quiet and gentlemanly and expressed the view that the situation may be improved if, in lieu of weekly visits, the child remains in each parent's custody for a longer period of time, such as a month or six months.
Dr. Fortuin, a psychiatrist who testified on the plaintiff's behalf, examined the child on three occasions. He expressed the view that the child's conduct was caused by "too much mothering" and that he needed "strong fatherly influence." He did not consider the instances of the child's resistance particularly harmful, although he stated that it would be a "great deal more wholesome if the child could be persuaded and was given to understand that was his father and he should go willingly." He testified that he asked the boy about the hotel visit and other trips and that "the boy himself answered that he enjoyed those trips." His opinion was that there "is something here on the part of the mother that causes him to go into these tantrums."
Our courts have often expressed the view that neither the father nor the mother has the greater right to the custody of their child and that, in a contest between them, the happiness and welfare of the child is the determining factor. Seitz v.Seitz, 1 N.J. Super. 234 (App. Div. 1949). However, in promoting the child's welfare, the court should strain every effort to attain for the child the affection of both parents rather than one. See Bierck v. Bierck, 123 A. 537 (N.J. Ch.
1923), not officially reported, where Vice-Chancellor Leaming expressed the view "that the greatest benefit a court can bestow upon children is not so much to be found in determining which parent shall enjoy their physical custody as it is in insuring that the children shall not only retain the love of both parents, but shall be at all times and constantly deeply imbued with love and respect for both parents." Where, as under the circumstances here presented, the issue is the custody of a six-year-old son whose father is in a position and sincerely desires to enhance their mutual love and affection, the mother's obligation, if she wishes to retain the primary custody properly granted to her, is not merely to refrain *Page 398 
from active resistance; on the contrary, she should affirmatively aid and encourage his efforts. Cf. Willis v. Willis,
118 A. 333 (N.J. Ch. 1922), not officially reported.
Our study of the record has led us to infer that, although the plaintiff has unswervingly endeavored to act as a good father to his son, the defendant has not fully discharged her responsibility and has not sufficiently extended her efforts to the end that the son visits with his father, willingly and happily. We recognize that the described incidents, if continued, may be harmful to the child and steps should be taken to avoid them, but we do not agree with the Advisory Master's drastic conclusion that the solution lies with complete termination of the father's right of visitation. With the expiration of time, this expedient will completely estrange father and son. We believe that, rather than decreasing the father's right of visitation, the proper direction may well be toward increasing it. Perhaps he should have custody of his son during the forthcoming holiday periods when school is not in session. Perhaps bi-weekly visitation over the entire week-end will be more effective. In any event, it is not our purpose to fix the precise times of visits or partial custody; that should be left to the Advisory Master whose intimate supervisory control will continue and permit, if necessary, frequent changes designed to insure the result that the child will have the love and consortium of both parents.
The order appealed from is reversed and the matter is remanded to the Chancery Division for further proceedings in accordance with this opinion. *Page 399