# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3749-18T4

DEIRDRE M. CORPORAN,

     Plaintiff-Appellant,

v.

ANDREW J. VINAS, JR.,

     Defendant-Respondent.

_____

     Submitted May 26, 2020 – Decided July 2, 2020

     Before Judges Fasciale and Rothstadt.

     On appeal from the Superior Court of New Jersey,
     Chancery Division, Family Part, Hudson County,
     Docket No. FD-09-0825-17.

     Corinne M. Mullen, attorney for appellant.

     Respondent has not filed a brief.

PER CURIAM

     In this custody and parenting time dispute, plaintiff Deirdre M. Corporan

appeals from the Family Part's March 22, 2019 order establishing joint legal

custody and an "alternating residential custody" arrangement between her and defendant, Andrew J. Vinas, Jr., which involved their two young children, a son born in 2015 and a daughter born in 2017. The court entered the order after conducting a plenary hearing and issuing an oral decision that was placed on the record on the same date it entered the order.

On appeal, plaintiff raises two issues: "The trial court improperly ordered an alternating week custody arrangement" as there was no home inspection or drug testing completed before the order's entry; and we should remand this matter "for determinations as to child support and other financial issues." We affirm because we conclude that the trial court did not abuse its discretion in establishing the challenged custodial arrangement, and, although the financial issues that were raised were not addressed by the trial court, they were the subject of a subsequent order that is not under appeal.

The matter was brought before the trial court through a motion filed on October 30, 2018, by defendant seeking "primary custody of [the] children . . . [and] joint custody and shared parenting." The application included a proposed vacation, holiday, and life event schedule, and noted that "[a]s a couple [the parties] have always lived together with the children, and [defendant] would like [their] children to have equal time with both of [them] as parents." In addition,

defendant made a request to claim both children as dependents for 2018 tax purposes, and thereafter, the parties should claim one child each year.

On November 1, 2018, plaintiff responded with a motion that for technical reasons was not filed by the court.[1] Evidently, in that motion, plaintiff raised issues about defendant's alleged substance abuse, his criminal record, and his probation. In addition, she allegedly expressed concern about an incident in defendant's mother's home with his brother-in-law, who overdosed and later died.

Defendant responded to plaintiff's unfiled motion with a certification in which he set forth the history of the parties' relationship and the birth of their children. He explained that due to a decline in their previous romantic relationship, by "May 2018, [they] were roommates co-parenting." By June 2018, defendant left the residence and moved in with his mother, and from that point, "the children were with [him] two or three nights a week and every other weekend." Moreover, his mother provided daycare service for the children when plaintiff went to work.

---

[1] We have not been provided with a copy of that motion or its supporting certification.

According to defendant, that arrangement was successfully maintained until October 2018, when the parties got into a dispute over defendant taking the children pumpkin picking in the presence of his girlfriend. Defendant summarized the children's custody status by stating "[s]ince birth, [the] children have always lived with both of [them] under the same roof . . . [and t]hereafter, [they] shared custody up until October 2018."

Addressing plaintiff's allegations about his history of drug addiction and being on probation, defendant noted that his status was not previously a concern to plaintiff as she left the children with him when she went on vacation for six days as recently as September 2018 and allowed defendant to be the "primary caretaker of [the] children." Defendant explained that in 2015, he voluntarily entered into an outpatient program to address an addiction to opioids, which he was prescribed for a back injury. Defendant stated that he was subsequently treated and had "been successful with being clean." Addressing his criminal conviction, he explained that in 2017 he pled guilty to a theft from his employer, he was sentenced to two years of probation with fines, and he reported to probation monthly. His probation was scheduled to be completed by April 2019. Defendant also provided a description of the circumstances surrounding his brother-in-law's death, which included that the brother-in-law collapsed at his

4

parents' house and later died at a hospital due to his "mismanagement of prescribed medication."

Plaintiff then filed an "application for modification of court order," seeking an increase in child support. She explained that the increase was necessary because she had "given birth to a second child . . . [and a] prior child support order was terminated" in April 2017.[2]

In support of that application, in addition to a case information statement and supporting financial documents, plaintiff filed a certification alleging defendant had "a long-standing heroin addiction for which he ha[d] been treated" but still gave her "concern." She also relied upon the incident involving defendant's brother-in-law and raised the issue of defendant's probation, alleging that a probation officer told her that defendant had "recently violated his probation."

In her certification, plaintiff also noted that she enrolled her children in daycare, in lieu of defendant's mother taking care of the children, and she was

---

[2] Evidently, there was never an order establishing custody or parenting time, but plaintiff earlier obtained an order by default for child support. However, defendant only became aware of that child support obligation when his paychecks were wage garnished, as all notices relating to that motion were improperly mailed to defendant's father's house. Once child support was wage garnished, the parties went to court, and plaintiff requested the termination of child support as the two were living together.

A-3749-18T4

seeking contribution to the "cost as part of child support." Plaintiff explained that she did "not want [her] children present in the home of [defendant], which [was] unsafe. [She did] not want [her] children being watched by his mother as she [did] not provide any educational teachings and also babys[at] another child who[ was] under the age of [four]."

Turning to statements made by defendant in his certification, plaintiff denied ever being told by defendant that he was addicted to heroin and only that he smoked marijuana. As to the issue with his employer, plaintiff indicated that after defendant "was fired for stealing money," he pretended that he still had a job even though he was really "on a drug binge." Plaintiff claimed he then "disappeared," although he was "later . . . found at a drug rehabilitation" center.

Significantly, plaintiff denied that they ever shared the children's custody. She claimed they followed a different parenting time arrangement after defendant left the residence. Plaintiff also alleged the children did not have adequate sleeping or living arrangements in defendant's mother's home and the house was crowded with other people who were also living there. She summarized that defendant should not have joint custody because "1) [there was] heroin use in the home; 2) [there was] domestic violence in the home [between defendant's sister and others]; 3) [defendant] frequent[ly] relapse[d] into heroin

use; [and] 4) [there was] no adequate bedroom or setting for [the] children in [the] home." For those reasons, plaintiff was concerned that her children may be in danger. She sought supervised visitation and drug testing, the entry of an order establishing a new child support amount, and an order directing defendant to bring current the amount he owed in arrears.

In response to the parties' motions, the court entered an order scheduling a plenary hearing, and, during the interim, granted supervised visitation for defendant. Prior to the hearing, supervised visitation reports were issued indicating that the sessions were all successful and appropriate without incident.

At the plenary hearing, the parties were the only witnesses. Before taking testimony, defendant advised the court he was moving into a new residence. Plaintiff's counsel requested that a home study report be ordered, which the court denied. During their testimony, both parties essentially testified to the facts stated in their respective certifications. In addition, defendant admitted that his addiction to opioids resulted in him also being addicted to heroin. However, after receiving treatment for his addiction, defendant never relapsed. Further, plaintiff testified that it was her understanding that defendant was not using heroin, however, because she had no interaction with defendant, she was unaware of what he did in his spare time. Both parties also made note of isolated

7

acts of violence against each other, however, the police were never called, and no complaints were ever filed. At the conclusion of the testimony, the court ordered both parties to submit proposed visitation schedules.

On March 22, 2019, the court placed its findings on the record. In its oral decision, the court made findings of fact about the history of the parties' relationship and their children. Addressing plaintiff's allegations about defendant's drug abuse, the court found that defendant admitted to having a substance abuse problem for which he received treatment at a program where plaintiff, at one time, had been working. The court also found that plaintiff "overstated the nature of the treatment," claiming it was inpatient when it was outpatient, and further finding that there was no proof that defendant ever tested positive while on probation since his 2017 conviction. Significantly, the court found that plaintiff's concern about defendant's substance abuse history was not only unsupported by the evidence but was belied by the fact that she left the children in his care when she went on vacation.

Addressing the statutory factors under N.J.S.A. 9:2-4, the court reviewed each of them and concluded they were "in balance." However, the court found that the one factor that was perhaps not in balance was the parties' ability to

cooperate. Nevertheless, the court found, "[o]n the whole," the factors supported an award of "joint legal custody."

In determining parenting time, the court observed that defendant's proposed schedule provided "essentially equal amounts of time, which [was] what had been occurring before the disruption of that schedule," and it was "in the children's best interest[s]." The court directed that the parties would have joint legal custody and shared "residential custody on alternating weeks." The court did not address issues relating to support or daycare expenses and told the parties to file motions addressing those issues as necessary.

On May 2, 2019, the court entered an order establishing child support to be paid by defendant in the amount of $112 per week, effective April 8, 2019, making it payable through probation, and fixing the arrears in the amount of $2,866.98. The order noted that it was entered in response to defendant's motion to reduce support based on the new custodial arrangement effective March 22, 2019. Upon the recommendation of a court hearing officer, the court finalized the order, which was signed by both parties. The next day, plaintiff filed the present appeal addressing only the March 22, 2019 order.

On appeal, plaintiff argues that the court granted defendant more time with the children than he sought in his motion, although she acknowledges that it was

part of his proposed visitation plan that defendant submitted in accordance with the court's order after the plenary hearing. Plaintiff claims she was "surprise[d by the] ruling," "she was blindsided," and the ruling deprived her of an adequate opportunity to prepare the case against the proposed arrangement. She also contends that awarding shared physical custody was not in the best interests of the children and that many of the court's findings were not supported by the evidence. In addition, plaintiff argues that the court failed to address issues relating to the daycare expenses and tax issues.

As to defendant's drug addiction and drug testing on probation, plaintiff claims that the trial court misconstrued the testimony by finding that defendant's drug test was negative. According to plaintiff, defendant admitted that he was drug tested while on probation, and in response to a question as to whether he had ever violated probation he said, "not at this moment, no," which did not support a finding of negative drug tests. We are not persuaded by any of plaintiff's contentions.

Our review of a Family Part court's determination in custody and parenting time issues is limited. "Family Part judges are frequently called upon to make difficult and sensitive decisions regarding the safety and well-being of children." Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007).

10

"[B]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to [the] family court[s'] factfinding." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)); see also Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016). "[W]e have 'invest[ed] the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (second alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012)).

We generally defer to factual findings made by family courts when such findings are "supported by adequate, substantial, [and] credible evidence." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015)). "[W]e defer to [F]amily [P]art judges 'unless they are so wide of the mark that our intervention is required to avert an injustice.'" A.B., 231 N.J. at 365 (quoting F.M., 211 N.J. at 427). With this deference, the family courts' findings "will only be disturbed if they are manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." N.H. v. H.H., 418 N.J. Super. 262,

279 (App. Div. 2011) (quoting Crespo v. Crespo, 395 N.J. Super. 190, 193-94 (App. Div. 2007)). This is particularly so where the evidence is largely testimonial and rests on the court's credibility determination. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

However, "[w]e owe no special deference to the . . . [court's] legal determinations." Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). We apply "[a] more exacting standard [in] our review of the trial court's legal conclusions," which we review de novo. Thieme, 227 N.J. at 283. "Notwithstanding our general deference to Family Part decisions, we are compelled to reverse when the court does not apply the governing legal standards." Slawinski, 448 N.J. Super. at 32 (citation omitted).

Policy considerations also guide our review. "In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand, 391 N.J. Super. at 105 (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). In making the determination, a "court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children." Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). "In issues of custody and visitation '[t]he question is always what is in the best interests of the children,

no matter what the parties have agreed to.'" Ibid. (alteration in original) (quoting P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999)).

Additionally, our legislature has determined "that it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents." N.J.S.A. 9:2-4. Further, "it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." Ibid. "[I]n promoting the child's welfare, the court should strain every effort to attain for the child the affection of both parents rather than one." Beck v. Beck, 86 N.J. 480, 485 (1981) (quoting Turney v. Nooney, 5 N.J. Super. 392, 397 (App. Div. 1949)). A custody decision "must foster, not hamper," a "healthy parent-child relationship" with both parents. Nufrio v. Nufrio, 341 N.J. Super. 548, 550 (App. Div. 2001).

In a proceeding concerning the custody of minor children, a court may award joint custody, sole custody with a provision for "appropriate parenting time for the noncustodial parent," or another arrangement that "the court may determine to be in the best interests of the child." N.J.S.A. 9:2-4(a) to (c). When deciding which option is best for the children, the court must consider the factors set forth in N.J.S.A. 9:2-4(c). See Sacharow v. Sacharow, 177 N.J. 62, 80 (2003) ("In [custody] cases, the sole benchmark is the best interests of the child.").

Although joint legal custody may be preferred in certain cases, as it may "foster the best interests of the child," Beck, 86 N.J. at 488, "the decision concerning the type of custody arrangement [is left] to the sound discretion of the . . . courts," Pascale v. Pascale, 140 N.J. 583, 611 (1995), to which "[w]e accord 'great deference.'" G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012)).

"Custody issues are resolved using a best interest[']s analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c)." Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009) (quoting Hand, 391 N.J. Super. at 105). While "the opinion of the trial judge in child custody matters is given great weight on appeal," we "must evaluate that opinion by considering the statutory declared public policy and criteria" implemented by the legislature. Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994).

Applying our deferential standard to the family court's findings here, and after conducting our de novo review of its legal conclusions, we affirm the court's order establishing joint legal custody and an alternating parenting time plan. We conclude the court thoroughly considered all the statutory factors and explained its factual findings, which were supported by "adequate, substantial

14                                                                    A-3749-18T4

and credible evidence" in the record. <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974).

Plaintiff's arguments to the contrary are belied by the record, which included the defendant's motion seeking joint legal custody and a shared parenting time arrangement, as well as the facts found by the trial court. There was nothing in the record to indicate that the arrangement was contrary to the children's best interests. The court conducted an extensive evaluation of the applicable factors set forth in N.J.S.A. 9:2-4, recognizing the discord between the parties but still concluding that it was in the children's best interests to have equal time with both parents. The court rejected plaintiff's unsupported claims about any possible danger posed by defendant.

As to the issue of support, including daycare expenses, we note again that contrary to plaintiff's contention, although the trial court did not address the issues of support at the conclusion of the hearing, evidently a post hearing motion was pursued by defendant and a support order was entered, which is not the subject of this appeal. Therefore, we do not address any claims regarding that issue.

A-3749-18T4

To the extent we have not specifically addressed any of plaintiff's remaining contentions, we find them to be without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION