**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0841-18T1

R.K.,

     Plaintiff-Respondent,

v.

J.L.,

     Defendant-Appellant.

_____

Submitted October 21, 2020 – Decided January 14, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FD-15-0010-17.

J.L., appellant pro se.

Paras, Apy & Reiss, PC, attorney for respondent (Peter C. Paras, of counsel and on the brief).

PER CURIAM

In this custody dispute, defendant J.L.[1], who is self-represented, appeals from an October 1, 2018 order denying her full custody of the parties' minor son and his removal to Connecticut. We affirm, substantially for the reasons set forth in Judge Deborah L. Gramiccioni's thoughtful and thorough forty-three-page written opinion. We add only the following brief comments.

When parties met in 2002, defendant was living in Connecticut, and plaintiff resided in New Jersey. After four months they discontinued their long-distance relationship but resumed in 2009. In 2011, the parties' son, A.K., was born. A.K. lived with defendant in Connecticut until October 2014, when defendant, A.K., and defendant's daughter moved to New Jersey to live with plaintiff. The parties lived together or near each other from October 2014 to January 2018. A.K. started to attend school, play sports, and develop relationships with friends and family. Defendant currently resides and works in New Jersey. The parties' relationship eventually dissolved.

On July 6, 2016, plaintiff filed a complaint for joint legal and physical custody of A.K., a parenting time schedule, right of first refusal, and counsel fees. Defendant filed a counterclaim on July 27, 2016, requesting sole physical

---

[1] We use initials to maintain the confidentiality of the parties and their child. R. 1:38-3(d)(12).

custody, parenting time, and relocation to Connecticut. In the summer of 2016, the parties agreed on a 50/50 parenting schedule. Plaintiff changed his work schedule to make his son a priority. On alternate weekends, A.K. and defendant traveled to Connecticut, where he was able to visit his maternal family and half-sister. However, defendant would not let A.K. speak to plaintiff by phone while in her care.

On September 7, 2016, another judge granted joint legal and residential custody of A.K. to the parties; the order also included a parenting time arrangement that was agreed upon by the parties. The judge denied defendant's request for removal and relocation and denied plaintiff's application for counsel fees without prejudice.

On January 12, 2017, defendant filed an Order to Show Cause requesting relocation, custody, and parenting time. That same day, Judge Gramiccioni entered an order denying defendant's request, and scheduled the matter to be heard as a motion on short notice on January 25, 2017. On January 17, 2017, plaintiff filed a cross-motion seeking to deny relocation, custody, and schedule the matter for trial. On January 19, 2017, defendant filed a response to plaintiff's cross-motion. On January 25, 2018, Judge Gramiccioni denied

A-0841-18T1

defendant's motion on short notice and determined that these issues required resolution at a plenary trial, which commenced on March 15, 2018.

At trial, plaintiff's witness, Dr. Mitch Abrams, was the only expert to testify. After conducting clinical interviews, psychological testing, document review, and interviews with collateral sources, Dr. Abrams concluded it would be in the child's best interests if A.K. had consistent, regular contact with both parents. Dr. Abrams recommended the parties share joint legal and residential custody, opining it would be against A.K.'s best interests if he relocated to Connecticut. Although she was a loving, caring, and attentive mother, Dr. Abrams opined that defendant tended to distort the truth. Dr. Abrams was particularly troubled by a statement she made to him that plaintiff should not be involved in A.K.'s life in any capacity. Despite this, Dr. Abrams concluded her regular presence in A.K.'s life is key to his development.

In contrast, Dr. Abrams found plaintiff to be emotionally stable and more reliable than defendant. In addition, Dr. Abrams determined A.K. and his father had a normal and stable relationship. Dr. Abrams recommended, in addition to joint custody, that the parties attend co-parenting classes together to improve their communication and assure each other of their willingness to place their

son's interests above their own. Dr. Abrams also recommended defendant be evaluated by a psychotherapist and attend psychotherapy immediately.

Judge Gramiccioni determined Dr. Abrams "exhibited a direct, professional and straightforward demeanor" and "acknowledged the relative strengths and weaknesses of both parents." In evaluating the case, the judge relied heavily upon Dr. Abram's testimony.

Other witnesses testified at trial, including defendant's adult daughter, friends, and a neighbor. Judge Gramiccioni found them all credible. She described plaintiff's testimony as "straightforward, forthright, and direct." In contrast, she found defendant "appeared motivated to gain an advantage in the instant custody litigation by exaggerating facts or exploiting certain incidents involving [p]laintiff, which were revealed to be more innocuous than [d]efendant had asserted." Judge Gramiccioni found defendant's former accusations against plaintiff to be unsubstantial, unfounded, "self-serving and baseless, and designed to gain an advantage in the custody proceedings that were pending at the time."

Judge Gramiccioni applied the factors enumerated in N.J.S.A. 9:2-4 and concluded it would be in A.K.'s best interest if the parties shared joint physical and legal custody, with equal shared parenting time. The judge found that "both

5

parties are able to function as joint custodians of A.K., and are capable of cooperating with each other for the benefit of their son." The judge also determined that both parents "appear willing, indeed eager, to accept custody of A.K." and that "neither parent has improperly withheld the child from the other and is unlikely to do so in the future." The judge also noted that "the interactions and relationships A.K. currently maintains with both [p]laintiff and [d]efendant promotes stability, contributes to his well-being, and is in his best interest." The judge stated, "that both parents have commensurate abilities to satisfy the needs of A.K.." The judge found that A.K. was "well-adjusted" and "happy and settled in his current school environment." The judge determined that neither party was unfit to parent and the psychological testing did not disqualify either. The judge noted that both parties spent considerable time with A.K. which underscored "the importance of shared physical custody of A.K., who clearly enjoys the time spent with both parents."

Ultimately, Judge Gramiccioni concluded that:

> A.K. has flourished under the current equal parenting time arrangements, notwithstanding the palpable friction the parties exhibited in the throes of litigation. He enjoys his school and extra-curricular activities, and spends quality and meaningful time with both [p]laintiff and [d]efendant. The child's best interests are served by the parents sharing legal and residential custody and having equal parenting time.

6

On the issue of removal, Judge Gramiccioni applied <u>Bisbing v. Bisbing</u>, 230 N.J. 309 (2017), and determined it would be in A.K.'s best interests to remain in New Jersey. The judge noted that, although defendant "set forth reasons why the move would be better for her," no testimony was presented "as to why the move would be better for A.K.."

Judge Gramiccioni found, based on Dr. Abrams' testimony, that "anything that would interfere with steady interactions with both parents would not be in A.K.'s best interest." The judge stated defendant's proposed parenting schedule "would pose hardships on the parties, insofar as the proposal would require multiple hour-long car trips to exchange A.K. every week during the school year . . . . For a six[-]year[-]old child, [d]efendant's proposed parenting schedule would be difficult, and more importantly, unnecessary."

In weighing the factors set forth in N.J.S.A. 9:2-4, Judge Gramiccioni concluded:

> The meaningful interaction and relationship of A.K. with both parents, the stability of the home environment, the quality and continuity of A.K.'s education, the extent and quality of the time spent with A.K. prior to or subsequent to the separation, and even the parents' employment responsibilities, all weigh in favor of denying [d]efendant's request.

Judge Gramiccioni, again evaluating the factors set forth in N.J.S.A. 9:2-4, determined that "A.K.'s best interests would be served by awarding the parties equal parenting time." The judge found the current schedule, which had been followed for almost two years, should continue.[2]

On appeal, defendant raises two points for our consideration:

POINT I

THE TRIAL COURT INAPPROPRIATELY DENIED THE APPLICATION FOR RELOCATION TO CONNECTICUT.

POINT II

THE TRIAL COURT INAPPROPRIATELY AWARDED JOINT CUSTODY BETWEEN THE PARTIES AS OPPOSED TO AWARDING SOLE PHYSICAL AND LEGAL CUSTODY TO DEFENDANT/APPELLANT.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Because a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses.'" Cesare, 154 N.J. at 412 (quoting

_____

[2] The parties shared "a bi-weekly 3-2-2 cycle."

8

Pascale v. Pascale, 113 N.J. 20, 33 (1988)). As such, "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[W]e owe no deference to the judge's decision on an issue of law or the legal consequences that flow from established facts." Dever v. Howell, 456 N.J. Super. 300, 309 (App. Div. 2018) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Our legislature has determined that it

> is in the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.
>
> [N.J.S.A. 9:2-4.]

"[I]n promoting the child's welfare, the court should strain every effort to attain for the child the affection of both parents rather than one." Beck v. Beck, 86 N.J. 480, 485 (1981) (quoting Turney v. Nooney, 5 N.J. Super. 392, 397 (App. Div. 1949)). A custody decision "must foster, not hamper," a "healthy

parent-child relationship" with both parents. Nufrio v. Nufrio, 341 N.J. Super. 548, 550 (App. Div. 2001). A parent's enumerated rights on custodial matters are qualified, however, by the multiple factors set forth in N.J.S.A. 9:2-4, which require courts to evaluate the child's best interests. See Faucet v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009) (stating "the touchstone" of all custody cases is the child's best interests).

Applying our deferential standard to the family court's findings, and after conducting our de novo review of its legal conclusions, we affirm Judge Gramiccioni's order establishing joint legal and residential custody. We conclude the judge thoroughly considered all the statutory factors and explained the factual findings, which were supported by "adequate, substantial and credible evidence" in the record. Rova Farms, 65 N.J. at 484. Contrary to defendant's assertions, there was nothing in the record to indicate that the arrangement was contrary to A.K.'s best interests. The judge conducted an extensive evaluation of the applicable factors set forth in N.J.S.A. 9:2-4, recognizing the discord between the parties but still concluding that it was in the A.K.'s best interests to have equal time with both parents.

In that regard, we also are satisfied that Judge Gramiccioni's denial of A.K.'s removal was equally supported by the record and in the child's best

interests. In <u>Bisbing</u>, our Supreme Court departed from the two-part removal test in <u>Baures v. Lewis</u>, 167 N.J. 91, 118-20 (2001), and replaced it with the best-interests standard embodied in N.J.S.A. 9:2-4. 230 N.J. at 312-13. Under N.J.S.A. 9:2-2, a parent who seeks to remove a child from New Jersey without the other parent's consent must demonstrate "cause" for the removal, which is "determined by a best interests analysis in which the court will consider all relevant factors set forth in N.J.S.A. 9:2-4(c), supplemented by other facts as appropriate." <u>Bisbing</u>, 230 N.J. at 338. The judge's decision denying removal was supported by the substantial, credible evidence in the record, and we discern no basis to disturb it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0841-18T1