**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3162-20

A.D.C.,

    Plaintiff-Appellant,

v.

M.T.,

    Defendant-Respondent.

_____

Submitted October 17, 2023 – Decided January 9, 2024

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-000356-21.

Geist Law, LLC, attorneys for appellant (Jared A. Geist, on the briefs).

Hegge & Confusione, LLC, attorneys for respondent (Michael James Confusione, of counsel and on the brief).

PER CURIAM

Plaintiff A.D.C.[1] appeals the Family Part's May 26, 2021 order establishing joint custody, parenting time, child support and related issues regarding P.T. (Poppy), the minor daughter of plaintiff and defendant M.T. Having reviewed plaintiff's arguments and the record in light of the applicable legal standards, we affirm.

I.

Plaintiff and defendant lived together from November 2007 to July 2019; Poppy was born in 2013. In addition to Poppy, plaintiff has two older daughters from another relationship. According to plaintiff, defendant was not an involved parent with Poppy, and was absent from the household in the months prior to their breakup.

After the parties separated, plaintiff filed a verified complaint seeking an order granting her sole custody of Poppy, establishing a parenting time schedule, awarding child support, and seeking other relief. Both represented by counsel, the parties participated in mediation and resolved most points raised in the complaint. They then appeared before Judge Michael Antoniewicz to address the remaining issues. Plaintiff's counsel advised the court there were "wrinkles"

---

[1] We use initials and a pseudonym in order to protect the privacy of the parties and their child. R. 1:38-3(d)(13).

in the holiday schedule, specifically on Christmas; and plaintiff "was still maintaining on the legal custody issue" because defendant had not "been involved [with Poppy] prior to the litigation." Defendant's counsel indicated there were "basic issues" including the division of holidays and the child tax deduction. The judge asked, "So how . . . do you want to proceed? I mean, [do] you want to have a hearing? Let's have a hearing." The judge set a date to conduct a plenary hearing and ordered any stipulations to be filed prior to that date.

When the parties appeared for the hearing, the court began by advising, "Today is the day for the hearing," and asked whether any issues had been resolved. Defendant's counsel indicated in the affirmative, and summarized what remained as:

> issues that concern how joint custody works in the sense of how some communication is to occur with respect to medical issues and the like, some telephone contact issue, joint custody issues with respect to how decisions are to be made with respect to the child notification—with respect to them—some holiday issues, the tax exemption, and some personal property issues.

Plaintiff and defendant were sworn in and provided testimony in addition to counsel's arguments on each issue. Regarding Poppy's Christmas and Easter breaks from school, plaintiff believed it would be best to split each break mid-

3 <span>A-3162-20</span>

week "so that [they] both get to spend the time with [Poppy] during the holidays—holiday breaks." Defendant wanted "to spend as much time as [he] possibly can with her" because he only had Poppy four days a month, and argued a split week would make taking a vacation impossible. The court found it was in the child's best interests for plaintiff and defendant each to have a block of uninterrupted time because "as children go to school, those blocks [of time] become more rare and more valuable," and ordered the parties to each have one break and alternate the breaks each year.

The court then addressed Christmas and Christmas Eve, which both parties celebrate. Plaintiff indicated it was tradition for Poppy to spend Christmas with her two sisters and therefore she wanted defendant to have Poppy Christmas Eve into Christmas morning so she could spend Christmas day with her sisters. Defendant countered that a 9:00 a.m. drop off "eviscerates Christmas morning." The court decided it was in Poppy's best interests to alternate the holidays, reasoning "children . . . are resilient. They will enjoy time with both parents. The experience will be unique, but still bonding with both biological parents."

The court then addressed Easter and Good Friday. Plaintiff wanted to pick up Poppy at 5:30 p.m. on Good Friday and defendant preferred to pick her up in

4

the morning because she is off from school that day. The court decided the Easter holiday would be considered the whole weekend beginning 9:00 a.m. on Good Friday and ending on Sunday, and the parties would alternate years.

As for the dependent tax deduction, plaintiff had already filed her taxes for the prior year and wanted to retain the deduction because she had historically utilized it and earned less income than defendant; without it, she claimed she would take on a severe financial burden. Defendant sought to alternate the deduction. The court found it was common practice to alternate the deduction and ordered the parties to do so in the future.[2]

Addressing child support, counsel represented that the parties had exchanged income documentation and had calculated a weekly child support obligation of $217 utilizing the child support guidelines.[3] Plaintiff disputed defendant's personal income as reported on his federal income taxes, and was "trying to vet his [S]chedule C on the business, which would appear to have a higher income than he was actually paying himself." Both counsel agreed the appropriate number was likely between $217 and $254, but advised the judge

---

[2] Although the judge stated alternating the tax deduction was the "status quo," he apparently misspoke because plaintiff had historically claimed the child.

[3] Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B(2) to R. 5:6A (2024).

they would have further discussions about it. They agreed to have the court enter an order for "a temporary child support number" of $217, subject to counsel's "working on different numbers."

Plaintiff asked for the support obligation to be retroactive to the filing of the original complaint. The operative date was disputed because plaintiff claimed she filed the complaint in August 2020, but according to court records the complaint was filed on December 2, 2020. Therefore, the court gave plaintiff the opportunity to submit documentation supporting her claim of the earlier filing date, but she did not do so.

Regarding Poppy's extra-curricular activities, plaintiff testified, "if [Poppy] wants to be in an activity, it should be what [she] wants. It should have nothing do with what [defendant] or I want." She explained Poppy participated in softball, soccer, football cheer and Girl Scouts, and should be allowed to join other activities if she showed interest. Defendant expressed his concerns that Poppy was not always able to attend all her scheduled extra-curricular activities during his parenting time because he did not always know her schedule, sometimes planned other activities, and lived an hour away. The court decided it was in Poppy's best interests for her to remain enrolled in softball and soccer,

6

as she had been playing those sports. Moving forward, plaintiff and defendant were required to discuss signing her up for other activities. The court stated:

> But you know, going forward, this is where I see the breakdown in communication. Going forward, [A.D.C.]—in the past, I guess, you just took it upon yourself to sign her up for all these things. You're now going to have to co-parent with [M.T.]. So, you got to notify him . . . because it's joint legal custody. So, you need to have a discussion with the other parent, because if you're committing his time, you need his input on that.

At the conclusion of the hearing, the court reiterated, "I wanted to encourage both biological parents to start working together. [Poppy] will be happier. In the end, you will be happier. And then [Poppy] will grow up to be a strong and wonderful little girl." Defendant's counsel was to prepare a conforming order for the court's signature.

When the parties appeared for a conference a week later, counsel advised that plaintiff did not consent to defendant's proposed order and the parties still had not resolved certain issues regarding division of personal property. The judge noted plaintiff had given him "push-back" during the hearing, but he did not find her reasoning to be credible. Two weeks later, the parties again appeared for a conference because plaintiff was still dissatisfied with the proposed order. Primarily, she did not consent to joint legal custody because

defendant had not been involved in Poppy's life prior to the litigation. Counsel stated he had explained the law to his client, but she would not consent.

Plaintiff again asked the court to impute additional income to defendant for purposes of his child support obligation, but did not retain an expert or provide any evidence of defendant's higher personal income. Therefore, the court relied on the information defendant reported in his tax returns.

As to the effective date for the obligation, plaintiff's counsel again represented he attempted to file the complaint in August and September but encountered issues with the court's docketing. In the absence of any proof the complaint was filed on the earlier date, the court ordered child support obligation retroactive to the court's filing date of December 2, 2020.

After reviewing the provisions in the order with counsel and the parties, the court entered an order which provides in pertinent part:

> [Custody:]
>
> The [p]laintiff and [d]efendant shall share joint legal custody of the child. "Joint Legal Custody" is defined to mean all of the rights and responsibilities of parents with respect to children other than monetary obligations of support, which shall be established elsewhere. It includes the right to reasonably control and direct the activities of the child, to reasonably guide and discipline her, to reasonable association with and access to the child and to have the services of that child.

8

. . .

Holiday Parenting Time:

. . .

Easter:  The holiday shall begin at 9:00 [a.m.] on Good Friday [and] end Sunday at 6:00 [p.m.]  [Defendant] shall have Easter in even years and [plaintiff] shall have Easter in odd years.

Spring Break:  If the child's school break immediately follows Easter, then the holiday shall begin Easter Sunday at 6:00 [p.m.] and end the following Friday at 6:00 [p.m.]  In the event Easter does not immediately precede the child's Spring break, then the break shall be considered as starting on Monday at 9:00 [a.m.] through Friday at 6:00 [p.m.]  [Defendant] shall have Spring break in even years and [plaintiff] shall have Spring break in odd years.

. . .

Christmas Eve:  The holiday shall begin at 3:30 [p.m.] and end December 25 at 12:00 [p.m.] [Defendant] shall have Christmas Eve in odd years and [plaintiff] shall have Christmas Eve in even years.

Christmas Day:  The holiday shall begin at 12:00 [p.m.] and end December 26 at 10:00 [a.m.] [Defendant] shall have Christmas Day in even years and [plaintiff] shall have Christmas Day in odd years.

Christmas Break from School:  The holiday shall begin at 12:00 [p.m.] December 26[] and end December 30 at 5:00 [p.m.]  [Defendant] shall have Christmas Holiday Break in even years and [plaintiff] shall have Christmas Holiday Break in odd years.

A-3162-20

. . .

Child Support:

At present the parties dispute the following incomes. They are listed solely for the purpose of establishing a preliminary child support obligation. Each party reserves the right to seek a modification of this child support amount. Accordingly, an income of $105,340 per year was utilized for the [d]efendant and a combined income of $48,950 per year has been imputed to the [p]laintiff, which includes the rental income she receives. Based on the parenting time schedule described above, the [d]efendant shall pay the [p]laintiff child support in the amount of $217 per week based on the attached child support guidelines. . . . This obligation shall be retroactive to **December 2, 2020**[.]

. . .

Extra[-]curricular Activities:

The parties shall consult with each other and obtain the consent of the other party prior to enrolling the child in any extracurricular activities regardless of whether he/she will seek a financial contribution from the other party. The [c]ourt has reviewed the issue and determined that [Poppy] should continue in recreational soccer and softball, so as to not interfere with [defendant's] parenting time.

. . .

Dependency Exemption:

The parties shall alternate the dependency exemption/tax credit for their daughter. The

10

[d]efendant shall claim the exemption/credit in even years and the [p]laintiff shall claim the exemption/credit in odd years.

Plaintiff appeals the portions of the trial court's order setting custody, parenting time and child support. She argues the court erred by: (1) failing to conduct a plenary hearing; (2) setting the retroactive child support date to December 2, 2020; (3) not considering defendant's business income from his self-employed business; (4) ignoring the minor child's status quo regarding extra-curricular activities; (5) awarding joint legal custody; (6) establishing the holiday schedule; and (7) alternating the income tax deduction.

## II.

Appellate courts defer to the trial court's findings of fact "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). See Gnall v. Gnall, 222 N.J. 414, 428 (2015). That review is altered slightly, however, in family part cases "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, 154 N.J. at 413. Appellate courts "review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83

(2016) (quoting Cesare, 154 N.J. at 413). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Id. at 283 (quoting Cesare, 154 N.J. at 413). "We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012). Therefore, the appellate court accords "great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012).

In addition to substantive rulings, a judge's decision not to conduct a plenary hearing is also reviewed on an abuse of discretion standard. Hand v. Hand, 391 N.J. Super. 102, 111-12 (App. Div. 2007).

An abuse of discretion occurs when a trial court makes "findings inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," or "fail[s] to consider controlling legal principles." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (first quoting Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004); then quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002); then quoting Storey, 464 N.J. Super. at 479). An abuse of discretion can also be found if the court "fails to take into consideration all relevant factors[,] and when its decision

reflects a clear error in judgment." State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017).

A.

Having established our deferential standard of review, we first turn to plaintiff's issues regarding custody and parenting time. She contends the trial court erred in failing to conduct a plenary hearing, did not allow for testimony or evidence to be entered, and instead made credibility determinations on the papers.

In Family Part matters, if mediation fails to resolve custody and parenting time issues, the court shall conduct a plenary hearing to resolve the factual disputes and place on the record its factual findings and conclusions of law required by N.J.S.A. 9:2-4(f) and Rule 1:7-4(a). D.A. v. R.C., 438 N.J. Super. 431, 433 (App. Div. 2014).

A thorough plenary hearing is necessary in contested custody matters where the parents make materially conflicting representations of fact. K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014). A plenary hearing is only required if there is a genuine, material and legitimate factual dispute. See Lepis v. Lepis, 83 N.J. 139, 159 (1980) (holding "a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing

13

is necessary").  A plenary hearing must be conducted where "the custody of [a child] is a genuine and substantial issue."  See Faucett v. Vasquez, 411 N.J. Super. 108, 128 (App. Div. 2009) (finding that a parent's military deployment to a foreign country constituted a "significant change of circumstances" warranting a plenary hearing).  A party's conclusory certifications in a custody dispute are insufficient to warrant a plenary hearing.  Ibid.

Despite plaintiff's claims to the contrary, the court conducted a plenary hearing to decide the outstanding issues between the parties.  Both parties were represented by counsel and had notice of the hearing.  Both parties were given the opportunity to testify under oath as to their positions regarding parenting time, extra-curricular activities, child support and the tax deduction.  Neither party called any other witnesses, sought to admit any documents into evidence, or cross-examined the opposing party.  Based on the record before us, the trial court did not abuse its discretion because it conducted a plenary hearing and made credibility determinations based on hearing the parties' testimony firsthand.

Plaintiff next argues the court erred by awarding both parties joint legal custody without considering defendant's lack of prior parental involvement. "[T]he decision concerning the type of custody arrangement [is left] to the sound

discretion of the trial court[.]" Nufrio v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001) (quoting Pascale v. Pascale, 140 N.J. 583, 611 (1995)). Therefore, "the opinion of the trial judge in child custody matters is given great weight on appeal." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994).

In custody cases, it is well settled that the court's primary consideration is the best interests of the child. Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). The court must focus on the "safety, happiness, physical, mental and moral welfare" of the child. Fantony v. Fantony, 21 N.J. 525, 536 (1956). See also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) ("In issues of custody and visitation '[t]he question is always what is in the best interests of the [child], no matter what the parties have agreed to.'") (quoting Giangeruso v. Giangeruso, 310 N.J. Super. 476, 479 (Ch. Div. 1997)). Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c). V.C. v. M.J.B., 163 N.J. 200, 227-28 (2000).

The preferred outcome of a custody dispute is an award of joint physical and legal custody to each parent. Beck v. Beck, 86 N.J. 480, 485 (1981). "Moreover, parents involved in custody controversies have by statute been granted both equal rights and equal responsibilities regarding the care, nurture,

education and welfare of their children." Ibid. (citing N.J.S.A. 9:2-4). Although

not a mandate, the

> statute indicates a legislative preference for custody decrees that allow both parents full and genuine involvement in the lives of their children following a divorce. This approach is consonant with the common law policy that "in promoting the child's welfare, the court should strain every effort to attain for the child the affection of both parents rather than one."
>
> [Ibid. (citing Turney v. Nooney, 5 N.J. Super. 392, 397 (App. Div. 1949)).]

This legislative preference may only be overcome by a "showing of gross

misconduct, unfitness, neglect, or 'exceptional circumstances' affecting the

welfare of the child," Watkins v. Nelson, 163 N.J. 235, 246 (2000), which must

be demonstrated by clear and convincing evidence. V.C., 163 N.J. at 227-28.

Here, the court granted joint legal custody because, consistent with

legislative preference, Poppy's interests are best served having both parents in

her life. Nothing in the record before the court, including the testimony adduced

during the plenary hearing, would have supported an award of sole legal custody

to plaintiff. The parenting issues she raised involved defendant's lack of

parenting in the time preceding the parties' breakup. These concerns came

nowhere near approaching clear and convincing evidence of "gross misconduct,

unfitness, neglect, or 'exceptional circumstances' affecting the welfare of the

16

child." Watkins, 163 N.J. at 246. Therefore, there was no genuine issue of material fact that would have required the court to conduct another plenary hearing to determine legal custody, and we discern no abuse of discretion in the court's decision granting joint custody to both parties.

Plaintiff also contends the court ignored Poppy's status quo regarding extra-curricular activities and improperly found her participation required defendant's approval, which is not in the child's best interests. The judge considered the parties' testimony regarding Poppy's participation in extra-curricular activities. Given the parties' diverging viewpoints, the court decided Poppy should remain in softball and soccer, and any new activities going forward must be discussed between the parties. The court aptly noted the parties needed to start co-parenting and communicating about decisions involving Poppy. We find no abuse of discretion in the court's decision that would warrant our intervention and reversal.

Plaintiff also contends the court erred in setting the holiday schedule because it failed to consider Poppy's relationship with her two older sisters. We reject this assertion because the record plainly shows the judge considered each party's position regarding Christmas and found it was in Poppy's best interests to alternate the holidays between her parents, reasoning she would benefit from

17

time spent with both parents during the holidays. While the court did not agree with plaintiff's preference in the holiday schedule, "the interaction and relationship of the child with its parents and siblings" is not a determinative factor, but one of many to be considered in making custody determinations. See N.J.S.A. 9:2-4. Here too, we find no abuse of discretion in the court's decision.

B.

We next address plaintiff's contention the court erred by not considering defendant's income from his self-employed businesses, and calculated child support on defendant's self-reported income.

Child support awards are governed by Rule 5:6A. The child support guidelines set forth in Appendix IX "shall be applied when an application to establish or modify child support is considered by the court." Ibid. "The guidelines may be modified or disregarded by the court only where good cause is shown," which is "within the sound discretion of the court." Ibid.

The guidelines assume parents are sharing in the child's expenses in proportion to their relative incomes "and that those percentages are based on the combined net income of the parents." Caplan v. Caplan, 182 N.J. 250, 264 (2005). "The guidelines generally define 'net income' as 'gross income minus income taxes, mandatory union dues, mandatory retirement, previously ordered

18

child support orders, and, when appropriate, a theoretical child support obligation for other dependents.'" Ibid. (quoting Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX-A to R. 5:6A ¶1 at 2516 (2005)). Income from self-employment . . . and operation of a business is included in gross income. Peregoy v. Peregoy, 358 N.J. Super. 179, 187, 209 (App. Div. 2003).

"The trial court has substantial discretion in making a child support award." Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001). If an award for child support is consistent with the law, it "will not be disturbed unless it is 'manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 315-16 (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)). "Of course, the exercise of this discretion is not limitless[,]" and remains guided by the law and principles of equity. Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg, 171 N.J. at 571 (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir.1985)).

In addition, "[i]mputation of income is left to the sound discretion of the trial judge based on the evidence presented," Sternesky v. Salcie-Sternesky, 396 N.J. Super. 290, 307-08 (App. Div. 2007). "Imputation may also be justified when examining income reported by self-employed obligors, who control the means and the method of their earnings." Elrom, 439 N.J. Super. at 436 (citing Donnelly v. Donnelly, 405 N.J. Super. 117, 128-29, (App. Div. 2009)).

Here, defendant is self-employed through his two companies. Plaintiff asserts defendant's Schedule C business income is over four times the amount he claims as personal income and the court erred by not imputing additional income. However, plaintiff did not produce an expert or any other documentation or evidence to support her request. Therefore, the court relied on defendant's 2019 tax return information, which reflected net income of $105,340, in calculating the child support award.

We also note that counsel stated the parties intended to discuss a "different child support number" outside of court. On counsel's consent, the judge entered an order for $217 on a temporary basis, subject to an alternate arrangement arrived at by the parties. The child support award, which was based on the documentation provided by the parties, was not manifestly unreasonable, arbitrary or contrary to any evidence. Furthermore, plaintiff had the opportunity

20

to seek a modification based on additional income information but did not do so.

Plaintiff also takes issue with the effective date of the child support obligation. "A request for an order of support begins with the filing of a complaint pursuant to [Rule] 5:4-2." Fall & Romanowski, New Jersey Family Law Child Custody, Protection & Support § 36:1-1 (2022-2023).

At the time of the hearing, the only documentation before the court was a copy of the complaint affixed with the December 2, 2020 filing date. On appeal, plaintiff appended a document purporting to be the Judiciary Electronic Docketing System (JEDS) transaction for the complaint, which indicates a file date of August 14, 2020. However, this document is not part of the record on appeal and plaintiff did not file a motion to supplement the record. Therefore, we decline to consider the document. Venner v. Allstate, 306 N.J. 106, 111 (App. Div. 1997). Although we will not disturb the trial court's decision because it was based on the documentation before it at the time, plaintiff may file a motion to modify the child support obligation in the Family Part with these additional proofs. We take no position on the merits of that application.

Lastly, we address plaintiff's contention the judge erred by alternating the income tax deduction because her income level is less than defendant's, further

reducing the amount of money she has available to spend on Poppy, which is not in the child's best interests. "The Internal Revenue Code, 26 U.S.C. § 152(e)(1), gives a custodial parent the right to the tax exemption, subject to waiver by that parent." Heinl v. Heinl, 287 N.J. Super 337, 352-53 (App. Div. 1996) (citing Gwodz v. Gwodz, 234 N.J. Super. 56, 62 (App. Div. 1989)). "The trial court may exercise its discretion in allocating tax exemptions, subject to acceptance by the Internal Revenue Service." Id. at 353.

Here, the court allocated the tax deduction to both plaintiff and defendant, alternating each year, because it is standard practice in joint custody situations. Although plaintiff had historically claimed the child, she did so prior to defendant's paying her child support; therefore, the court did not abuse its discretion in ordering the parties to alternate the deduction based on equitable principles.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3162-20